IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | | |
|---|---|---|
| Joshua Chad Ambrose, | ) | Civil Action No. 8:15-cv-02762-CMC-JDA |
| | ) | |
| Plaintiff, | ) | **REPORT AND RECOMMENDATION** |
| | ) | **OF MAGISTRATE JUDGE** |
| vs. | ) | |
| | ) | |
| Carolyn W. Colvin, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the Court for a Report and Recommendation pursuant to Local Rule 73.02(B)(2)(a), D.S.C., and Title 28 U.S.C. § 636(b)(1)(B).[1]  Plaintiff brought this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) to obtain judicial review of a final decision of the Commissioner of Social Security ("the Commissioner"), denying Plaintiff's claims for disability insurance benefits ("DIB") and supplemental security income ("SSI").[2] For the reasons set forth below, it is recommended that the decision of the Commissioner be affirmed.

## PROCEDURAL HISTORY

In August 2011, Plaintiff filed applications for DIB and SSI, alleging disability beginning June 28, 2008.  [R. 226–42.]  The claims were denied initially and upon reconsideration by the Social Security Administration ("the Administration").  [R. 113–22,

---

[1]A Report and Recommendation is being filed in this case, in which one or both parties declined to consent to disposition by a magistrate judge.

[2]Section 1383(c)(3) provides, "The final determination of the Commissioner of Social Security after a hearing under paragraph (1) shall be subject to judicial review as provided in section 405(g) of this title to the same extent as the Commissioner's final determinations under section 405 of this title."  42 U.S.C. § 1383(c)(3).

125–34, 137–46, 149–58.]  Plaintiff filed a request for hearing before an administrative law judge ("ALJ"), and on December 18, 2013, ALJ Harold Chambers conducted a hearing on Plaintiff's claims.  [R. 9–34.]

On March 21, 2014, the ALJ issued his decision finding that Plaintiff was not disabled.  [R. 12–23.]  At Step 1,[3] the ALJ found Plaintiff met the insured status requirements of the Social Security Act through December 31, 2012, and had not engaged in substantial gainful activity since June 28, 2008, the alleged onset date.  [R. 14, Findings 1 & 2.]  At Step 2, the ALJ found that Plaintiff had the following severe impairments: degenerative disc disease, obesity, depression, an adjustment disorder, anxiety, a personality disorder with agoraphobia/social phobia, polysubstance abuse, and a right arm laceration with repair.  [R. 14, Finding 3.]  At Step 3, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1.  [R. 15, Finding 4.]  The ALJ specifically considered Listings 1.02B, 1.04, 12.04, 12.06, and 12.09. [*See id.*]

Before addressing Step 4, Plaintiff's ability to perform his past relevant work, the ALJ found that Plaintiff retained the following residual functional capacity ("RFC"):

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b), except the claimant is able to stand/walk four to six hours of an eight-hour workday, sit for up to six of eight hours, and to do simple routine repetitive tasks, in a job that does not require fast-paced production or a fast

---

[3]The five-step sequential analysis used to evaluate disability claims is discussed in the Applicable Law section, *infra*.

pace. The undersigned also determines the claimant is frequently able to push/pull with the right upper extremity, climb ramps/stairs, operate foot controls, and finger/handle with the right hand, and occasionally able to climb ladders/scaffolds, balance, stoop, kneel, crawl, or interact with the general public/co-workers. The undersigned also concludes the claimant is unable to climb ropes or to crouch, and that the claimant should avoid concentrated exposure to hazards such as moving machinery and unprotected heights. The undersigned notes the claimant has no restrictions in fingering, pushing/pulling, or handling with his left hand, and that the claimant is limited to occupations that do not involve handling, sale, or preparation of alcoholic beverages nor access to narcotic drugs. There can be only occasional interaction with co-workers and the general public, but he can be around coworkers throughout the work day.

[R. 17, Finding 5.]  Based on this RFC, the ALJ determined at Step 4 that Plaintiff was unable to perform his past relevant work as a doffer, electrician helper, and general laborer.  [R. 21, Finding 6.]  However, in light of Plaintiff's age, education, work experience, residual functional capacity, and the testimony of a vocational expert, the ALJ determined that there were jobs that existed in significant numbers in the national economy that the Plaintiff could perform.  [R.22, Finding 10.]  Thus, the ALJ found that Plaintiff had not been under a disability, as defined in the Act, from June 28, 2008, through the date of the decision.  [R. 25, Finding 11.]

Plaintiff filed a request for review of the ALJ's decision with the Appeals Council, which denied review on June 5, 2015.  [R. 1–6 .]  Plaintiff commenced an action for judicial review in this Court on July 13, 2015.  [Doc. 1.]

## THE PARTIES' POSITIONS

Plaintiff contends the ALJ's decision is not supported by substantial evidence and contains legal errors warranting the reversal and remand of the case.  [Doc. 8.]

Specifically, Plaintiff contends the ALJ erred in assessing Plaintiff's right arm injury by considering evidence that predated his injury, which occurred in October 2012, and ignoring Plaintiff's testimony regarding his limitations. [*Id*. at 5–6.] Plaintiff also argues the ALJ erred in finding Plaintiff could perform less than a full range of light work due to Plaintiff's loss of fine dexterity in his right hand and chronic back pain. [*Id.* at 7.] At a minimum, Plaintiff contends the ALJ should have explained why he did not give controlling weight to Dr. Robert Walker's opinion finding that Plaintiff could not perform even sedentary work. [*Id.*]

The Commissioner contends the ALJ's decision should be affirmed because there is substantial evidence of record that Plaintiff was not disabled within the meaning of the Social Security Act. [Doc. 9.] Specifically, the Commissioner argues that, even if Plaintiff could not use his right hand at all, the vocational expert found that, in light of all of his other limitations, Plaintiff was still capable of work as a sorter and that this testimony constitutes substantial evidence that Plaintiff was not disabled. [*Id*. at 1–2, 14.] Further, the Commissioner contends that the ALJ's RFC assessment more than adequately accounted for the limitations caused by Plaintiff's back impairment, thus no purpose would be served by remanding this case for the ALJ to consider Dr. Walker's RFC assessment. [*Id.* at 16, 19.]

## STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla—i.e., the evidence must do more than merely create a suspicion of the existence of a fact and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966) (citing *Woolridge v. Celebrezze*, 214 F. Supp. 686, 687 (S.D.W. Va. 1963)) ("Substantial evidence, it has been held, is evidence which a reasoning mind would accept as sufficient to support a particular conclusion.  It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance.  If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'").

Where conflicting evidence "allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the [Commissioner's] designate, the ALJ)," not on the reviewing court.  *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996); *see also Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991) (stating that where the Commissioner's decision is supported by substantial evidence, the court will affirm, even if the reviewer would have reached a contrary result as finder of fact and even if the reviewer finds that the evidence preponderates against the Commissioner's decision).  Thus, it is not within the province of a reviewing court to determine the weight of the evidence, nor is it the court's function to substitute its judgment for that of the Commissioner so long as the decision is supported by substantial evidence.

5

*See Bird v. Comm'r*, 699 F.3d 337, 340 (4th Cir. 2012); *Laws*, 368 F.2d at 642; *Snyder v. Ribicoff*, 307 F.2d 518, 520 (4th Cir. 1962).

The reviewing court will reverse the Commissioner's decision on plenary review, however, if the decision applies incorrect law or fails to provide the court with sufficient reasoning to determine that the Commissioner properly applied the law. *Myers v. Califano*, 611 F.2d 980, 982 (4th Cir. 1980); *see also Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994). Where the Commissioner's decision "is in clear disregard of the overwhelming weight of the evidence, Congress has empowered the courts to modify or reverse the [Commissioner's] decision 'with or without remanding the cause for a rehearing.'" *Vitek v. Finch*, 438 F.2d 1157, 1158 (4th Cir. 1971) (quoting 42 U.S.C. § 405(g)). Remand is unnecessary where "the record does not contain substantial evidence to support a decision denying coverage under the correct legal standard and when reopening the record for more evidence would serve no purpose." *Breeden v. Weinberger*, 493 F.2d 1002, 1012 (4th Cir. 1974).

The court may remand a case to the Commissioner for a rehearing under sentence four or sentence six of 42 U.S.C. § 405(g). *Sargent v. Sullivan*, 941 F.2d 1207 (4th Cir. 1991) (unpublished table decision). To remand under sentence four, the reviewing court must find either that the Commissioner's decision is not supported by substantial evidence or that the Commissioner incorrectly applied the law relevant to the disability claim. *See, e.g.*, *Jackson v. Chater*, 99 F.3d 1086, 1090–91 (11th Cir. 1996) (holding remand was appropriate where the ALJ failed to develop a full and fair record of the claimant's residual functional capacity); *Brehem v. Harris*, 621 F.2d 688, 690 (5th Cir. 1980) (holding remand was appropriate where record was insufficient to affirm but was also insufficient for court

6

to find the claimant disabled). Where the court cannot discern the basis for the Commissioner's decision, a remand under sentence four is usually the proper course to allow the Commissioner to explain the basis for the decision or for additional investigation. *See Radford v. Comm'r*, 734 F.3d 288, 295 (4th Cir. 2013) (quoting *Florida Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985); *see also Smith v. Heckler*, 782 F.2d 1176, 1181–82 (4th Cir. 1986) (remanding case where decision of ALJ contained "a gap in its reasoning" because ALJ did not say he was discounting testimony or why); *Gordon v. Schweiker*, 725 F.2d 231, 235 (4th Cir. 1984) (remanding case where neither the ALJ nor the Appeals Council indicated the weight given to relevant evidence). On remand under sentence four, the ALJ should review the case on a complete record, including any new material evidence. *See Smith*, 782 F.2d at 1182 ("The [Commissioner] and the claimant may produce further evidence on remand."). After a remand under sentence four, the court enters a final and immediately appealable judgment and then loses jurisdiction. *Sargent*, 941 F.2d 1207 (citing *Melkonyan v. Sullivan*, 501 U.S. 89, 102 (1991)).

In contrast, sentence six provides:

> The court may . . . at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding . . . .

42 U.S.C. § 405(g). A reviewing court may remand a case to the Commissioner on the basis of new evidence only if four prerequisites are met: (1) the evidence is relevant to the determination of disability at the time the application was first filed; (2) the evidence is material to the extent that the Commissioner's decision might reasonably have been different had the new evidence been before him; (3) there is good cause for the claimant's

7

failure to submit the evidence when the claim was before the Commissioner; and (4) the claimant made at least a general showing of the nature of the new evidence to the reviewing court.  *Borders v. Heckler*, 777 F.2d 954, 955 (4th Cir. 1985) (citing 42 U.S.C. § 405(g)); *Mitchell v. Schweiker*, 699 F.2d 185, 188 (4th Cir. 1983); *Sims v. Harris*, 631 F.2d 26, 28 (4th Cir. 1980); *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979)), *superseded by amendment to statute*, 42 U.S.C. § 405(g), *as recognized in Wilkins v. Sec'y, Dep't of Health & Human Servs.*, 925 F.2d 769, 774 (4th Cir. 1991).[4]  With remand under sentence six, the parties must return to the court after remand to file modified findings of fact.  *Melkonyan*, 501 U.S. at 98.  The reviewing court retains jurisdiction pending remand and does not enter a final judgment until after the completion of remand proceedings.  *See Allen v. Chater*, 67 F.3d 293 (4th Cir. 1995) (unpublished table decision) (holding that an order remanding a claim for Social Security benefits pursuant to sentence six of 42 U.S.C. § 405(g) is not a final order).

---

[4]Though the court in *Wilkins* indicated in a parenthetical that the four-part test set forth in *Borders* had been superseded by an amendment to 42 U.S.C. § 405(g), courts in the Fourth Circuit have continued to cite the requirements outlined in *Borders* when evaluating a claim for remand based on new evidence.  *See, e.g.*, *Brooks v. Astrue*, No. 6:10-cv-152, 2010 WL 5478648, at *8 (D.S.C. Nov. 23, 2010); *Ashton v. Astrue*, No. TMD 09-1107, 2010 WL 3199345, at *3 (D. Md. Aug. 12, 2010); *Washington v. Comm'r of Soc. Sec.*, No. 2:08-cv-93, 2009 WL 86737, at *5 (E.D. Va. Jan. 13, 2009); *Brock v. Sec'y of Health & Human Servs.*, 807 F. Supp. 1248, 1250 n.3 (S.D.W. Va. 1992).  Further, the Supreme Court of the United States has not suggested *Borders*' construction of § 405(g) is incorrect.  *See Sullivan v. Finkelstein*, 496 U.S. 617, 626 n.6 (1990).  Accordingly, the Court will apply the more stringent *Borders* inquiry.

8

## APPLICABLE LAW

The Social Security Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a disability.  42 U.S.C. § 423(a).  "Disability" is defined as:

> the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 consecutive months.

*Id.* § 423(d)(1)(A).

## I.    The Five Step Evaluation

To facilitate uniform and efficient processing of disability claims, federal regulations have reduced the statutory definition of disability to a series of five sequential questions. *See, e.g.*, *Heckler v. Campbell*, 461 U.S. 458, 461 n.2 (1983) (noting a "need for efficiency" in considering disability claims).  The ALJ must consider whether (1) the claimant is engaged in substantial gainful activity; (2) the claimant has a severe impairment; (3) the impairment meets or equals an impairment included in the Administration's Official Listings of Impairments found at 20 C.F.R. Pt. 404, Subpt. P, App. 1; (4) the impairment prevents the claimant from performing past relevant work; and (5) the impairment prevents the claimant from having substantial gainful employment.  20 C.F.R. §§ 404.1520, 416.920. Through the fourth step, the burden of production and proof is on the claimant.  *Grant v. Schweiker*, 699 F.2d 189, 191 (4th Cir. 1983).  The claimant must prove disability on or before the last day of her insured status to receive disability benefits.  *Everett v. Sec'y of Health, Educ. & Welfare*, 412 F.2d 842, 843 (4th Cir. 1969).  If the inquiry reaches step

9

five, the burden shifts to the Commissioner to produce evidence that other jobs exist in the national economy that the claimant can perform, considering the claimant's age, education, and work experience. *Grant*, 699 F.2d at 191. If at any step of the evaluation the ALJ can find an individual is disabled or not disabled, further inquiry is unnecessary. 20 C.F.R. §§ 404.1520(a), 416.920(a)(4); *Hall v. Harris*, 658 F.2d 260, 264 (4th Cir. 1981).

### A.   *Substantial Gainful Activity*

"Substantial gainful activity" must be both substantial—involves doing significant physical or mental activities, 20 C.F.R. §§ 404.1572(a), 416.972(a)—and gainful—done for pay or profit, whether or not a profit is realized, *id.* §§ 404.1572(b), 416.972(b). If an individual has earnings from employment or self-employment above a specific level set out in the regulations, he is generally presumed to be able to engage in substantial gainful activity. *Id.* §§ 404.1574–.1575, 416.974–.975.

### B.   *Severe Impairment*

An impairment is "severe" if it significantly limits an individual's ability to perform basic work activities. *See id.* §§ 404.1521, 416.921. When determining whether a claimant's physical and mental impairments are sufficiently severe, the ALJ must consider the combined effect of all of the claimant's impairments. 42 U.S.C. §§ 423(d)(2)(B), 1382c(a)(3)(G). The ALJ must evaluate a disability claimant as a whole person and not in the abstract, having several hypothetical and isolated illnesses. *Walker v. Bowen*, 889 F.2d 47, 49–50 (4th Cir. 1989) (stating that, when evaluating the effect of a number of impairments on a disability claimant, "the [Commissioner] must consider the combined

10

effect of a claimant's impairments and not fragmentize them").  Accordingly, the ALJ must make specific and well-articulated findings as to the effect of a combination of impairments when determining whether an individual is disabled.  *Id.* at 50 ("As a corollary to this rule, the ALJ must adequately explain his or her evaluation of the combined effects of the impairments.").  If the ALJ finds a combination of impairments to be severe, "the combined impact of the impairments shall be considered throughout the disability determination process."  42 U.S.C. §§ 423(d)(2)(B), 1382c(a)(3)(G).

### C.     *Meets or Equals an Impairment Listed in the Listings of Impairments*

If a claimant's impairment or combination of impairments meets or medically equals the criteria of a listing found at 20 C.F.R. Pt. 404, Subpt. P, App.1 and meets the duration requirement found at 20 C.F.R. §§ 404.1509 or 416.909, the ALJ will find the claimant disabled without considering the claimant's age, education, and work experience.[5]  20 C.F.R. §§ 404.1520(d), 416.920(a)(4)(iii), (d).

### D.     *Past Relevant Work*

The assessment of a claimant's ability to perform past relevant work "reflect[s] the statute's focus on the functional capacity retained by the claimant."  *Pass v. Chater*, 65 F.3d 1200, 1204 (4th Cir. 1995).  At this step of the evaluation, the ALJ compares the claimant's residual functional capacity[6] with the physical and mental demands of the kind

---

[5]The Listing of Impairments is applicable to SSI claims pursuant to 20 C.F.R. §§ 416.911, 416.925.

[6]Residual functional capacity is "the most [a claimant] can still do despite [his] limitations."  20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).

of work he has done in the past to determine whether the claimant has the residual

functional capacity to do his past work.  20 C.F.R. §§ 404.1560(b), 416.960(b).

### E.    *Other Work*

As previously stated, once the ALJ finds that a claimant cannot return to her prior

work, the burden of proof shifts to the Commissioner to establish that the claimant could

perform other work that exists in the national economy.  *See* 20 C.F.R. §§ 404.1520(f)–(g),

416.920(f)–(g); *Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992).  To meet this burden,

the Commissioner may sometimes rely exclusively on the Medical-Vocational Guidelines

(the "grids").  Exclusive reliance on the "grids" is appropriate where the claimant suffers

primarily from an exertional impairment, without significant nonexertional factors.[7]  20

C.F.R. Pt. 404, Subpt. P, App. 2, § 200.00(e); *Gory v. Schweiker*, 712 F.2d 929, 930–31

(4th Cir. 1983) (stating that exclusive reliance on the grids is appropriate in cases involving

exertional limitations).  When a claimant suffers from both exertional and nonexertional

limitations, the grids may serve only as guidelines.  *Gory*, 712 F.2d at 931.  In such a case,

the Commissioner must use a vocational expert to establish the claimant's ability to

perform other work.  20 C.F.R. §§ 404.1569a, 416.969a; *see Walker*, 889 F.2d at 49–50

("Because we have found that the grids cannot be relied upon to show conclusively that

---

[7]An exertional limitation is one that affects the claimant's ability to meet the strength requirements of jobs. 20 C.F.R. §§ 404.1569a(a), 416.969a(a).  A nonexertional limitation is one that affects the ability to meet the demands of the job other than the strength demands.  *Id.*  Examples of nonexertional limitations include but are not limited to difficulty functioning because of being nervous, anxious, or depressed; difficulty maintaining attention or concentrating; difficulty understanding or remembering detailed instructions; difficulty seeing or hearing.  20 C.F.R. §§ 404.1569a(c)(1), 416.969a(c)(1).

claimant is not disabled, when the case is remanded it will be incumbent upon the [Commissioner] to prove by expert vocational testimony that despite the combination of exertional and nonexertional impairments, the claimant retains the ability to perform specific jobs which exist in the national economy.").  The purpose of using a vocational expert is "to assist the ALJ in determining whether there is work available in the national economy which this particular claimant can perform."  *Walker*, 889 F.2d at 50.  For the vocational expert's testimony to be relevant, "it must be based upon a consideration of all other evidence in the record, . . . and it must be in response to proper hypothetical questions which fairly set out all of claimant's impairments."  *Id.* (citations omitted).

## II.    Developing the Record

The ALJ has a duty to fully and fairly develop the record.  *See Cook v. Heckler*, 783 F.2d 1168, 1173 (4th Cir. 1986).  The ALJ is required to inquire fully into each relevant issue.  *Snyder*, 307 F.2d at 520.  The performance of this duty is particularly important when a claimant appears without counsel.  *Marsh v. Harris*, 632 F.2d 296, 299 (4th Cir. 1980).  In such circumstances, "the ALJ should scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts, . . . being especially diligent in ensuring that favorable as well as unfavorable facts and circumstances are elicited."  *Id.* (internal quotations and citations omitted).

## III.    Treating Physicians

If a treating physician's opinion on the nature and severity of a claimant's impairments is "well-supported by medically acceptable clinical and laboratory diagnostic

techniques and is not inconsistent with the other substantial evidence" in the record, the ALJ must give it controlling weight.  20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *see Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001).  The ALJ may discount a treating physician's opinion if it is unsupported or inconsistent with other evidence, i.e., when the treating physician's opinion does not warrant controlling weight, *Craig*, 76 F.3d at 590, but the ALJ must nevertheless assign a weight to the medical opinion based on the 1) length of the treatment relationship and the frequency of examination; 2) nature and extent of the treatment relationship; 3) supportability of the opinion; 4) consistency of the opinion with the record a whole; 5) specialization of the physician; and 6) other factors which tend to support or contradict the opinion, 20 C.F.R. §§ 404.1527(c), 416.927(c).  Similarly, where a treating physician has merely made conclusory statements, the ALJ may afford the opinion such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments.  *See Craig*, 76 F.3d at 590 (holding there was sufficient evidence for the ALJ to reject the treating physician's conclusory opinion where the record contained contradictory evidence).

In any instance, a treating physician's opinion is generally entitled to more weight than a consulting physician's opinion.  *See Mitchell v. Schweiker*, 699 F.2d 185, 187 (4th Cir. 1983) (stating that treating physician's opinion must be accorded great weight because "it reflects an expert judgment based on a continuing observation of the patient's condition for a prolonged period of time"); 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).  An ALJ determination coming down on the side of a non-examining, non-treating physician's

opinion can stand only if the medical testimony of examining and treating physicians goes both ways.  *Smith v. Schweiker*, 795 F.2d 343, 346 (4th Cir. 1986).  Further, the ALJ is required to review all of the medical findings and other evidence that support a medical source's statement that a claimant is disabled.  20 C.F.R. §§ 404.1527(d), 416.927(d).  However, the ALJ is responsible for making the ultimate determination about whether a claimant meets the statutory definition of disability.  *Id.*

## IV.    Medical Tests and Examinations

The ALJ is required to order additional medical tests and exams only when a claimant's medical sources do not give sufficient medical evidence about an impairment to determine whether the claimant is disabled.  20 C.F.R. §§ 404.1517, 416.917; *see also Conley v. Bowen*, 781 F.2d 143, 146 (8th Cir. 1986).  The regulations are clear: a consultative examination is not required when there is sufficient medical evidence to make a determination on a claimant's disability.  20 C.F.R. §§ 404.1517, 416.917.  Under the regulations, however, the ALJ may determine that a consultative examination or other medical tests are necessary.  *Id.*

## V.    Pain

Congress has determined that a claimant will not be considered disabled unless he furnishes medical and other evidence (e.g., medical signs and laboratory findings) showing the existence of a medical impairment that could reasonably be expected to produce the pain or symptoms alleged.  42 U.S.C. § 423(d)(5)(A).  In evaluating claims of disabling pain, the ALJ must proceed in a two-part analysis.  *Morgan v. Barnhart,* 142 F. App'x 716,

15

723 (4th Cir. 2005) (unpublished opinion).  First, "the ALJ must determine whether the claimant has produced medical evidence of a 'medically determinable impairment which could reasonably be expected to produce . . . the actual pain, in the amount and degree, alleged by the claimant.'"  *Id.* (quoting *Craig*, 76 F.3d at 594).  Second, "if, and only if, the ALJ finds that the claimant has produced such evidence, the ALJ must then determine, as a matter of fact, whether the claimant's underlying impairment *actually* causes her alleged pain."  *Id.* (emphasis in original) (citing *Craig*, 76 F.3d at 595).

Under the "pain rule" applicable within the United States Court of Appeals for the Fourth Circuit, it is well established that "subjective complaints of pain and physical discomfort could give rise to a finding of total disability, even when those complaints [a]re not supported fully by objective observable signs."  *Coffman v. Bowen*, 829 F.2d 514, 518 (4th Cir. 1987) (citing *Hicks v. Heckler*, 756 F.2d 1022, 1023 (4th Cir. 1985)).  The ALJ must consider all of a claimant's statements about his symptoms, including pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence.  20 C.F.R. §§ 404.1528, 416.928.  Indeed, the Fourth Circuit has rejected a rule which would require the claimant to demonstrate objective evidence of the pain itself, *Jenkins v. Sullivan*, 906 F.2d 107, 108 (4th Cir. 1990), and ordered the Commissioner to promulgate and distribute to all administrative law judges within the circuit a policy stating Fourth Circuit law on the subject of pain as a disabling condition, *Hyatt v. Sullivan*, 899 F.2d 329, 336–37 (4th Cir. 1990).  The Commissioner thereafter issued the following "Policy Interpretation Ruling":

16

> This Ruling supersedes, only in states within the Fourth Circuit (North Carolina, South Carolina, Maryland, Virginia and West Virginia), Social Security Ruling (SSR) 88-13, Titles II and XVI: Evaluation of Pain and Other Symptoms:
>
> ...
>
> **FOURTH CIRCUIT STANDARD:** Once an underlying physical or [m]ental impairment that could reasonably be expected to cause pain is shown by medically acceptable objective evidence, such as clinical or laboratory diagnostic techniques, the adjudicator must evaluate the disabling effects of a disability claimant's pain, even though its intensity or severity is shown only by subjective evidence. If an underlying impairment capable of causing pain is shown, subjective evidence of the pain, its intensity or degree can, by itself, support a finding of disability. Objective medical evidence of pain, its intensity or degree (i.e., manifestations of the functional effects of pain such as deteriorating nerve or muscle tissue, muscle spasm, or sensory or motor disruption), if available, should be obtained and considered. Because pain is not readily susceptible of objective proof, however, the absence of objective medical evidence of the intensity, severity, degree or functional effect of pain is not determinative.

SSR 90-1p, 55 Fed. Reg. 31,898-02, at 31,899 (Aug. 6, 1990). SSR 90-1p has since been superseded by SSR 96-7p, which is consistent with SSR 90-1p. *See* SSR 96-7p, 61 Fed. Reg. 34,483-01 (July 2, 1996). SSR 96-7p provides, "If an individual's statements about pain or other symptoms are not substantiated by the objective medical evidence, the adjudicator must consider all of the evidence in the case record, including any statements by the individual and other persons concerning the individual's symptoms." *Id.* at 34,485; *see also* 20 C.F.R. §§ 404.1529(c)(1)–(c)(2), 416.929(c)(1)–(c)(2) (outlining evaluation of pain).

## VI.     Credibility

The ALJ must make a credibility determination based upon all the evidence in the record.  Where an ALJ decides not to credit a claimant's testimony about pain, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding.  *Hammond v. Heckler*, 765 F.2d 424, 426 (4th Cir. 1985).  Although credibility determinations are generally left to the ALJ's discretion, such determinations should not be sustained if they are based on improper criteria.  *Breeden*, 493 F.2d at 1010 ("We recognize that the administrative law judge has the unique advantage of having heard the testimony firsthand, and ordinarily we may not disturb credibility findings that are based on a witness's demeanor.  But administrative findings based on oral testimony are not sacrosanct, and if it appears that credibility determinations are based on improper or irrational criteria they cannot be sustained.").

## APPLICATION AND ANALYSIS

Plaintiff's allegations of error revolve around the ALJ's RFC assessment which requires him ". . . to establish, by competent medical evidence, the physical and mental capacity that the claimant can perform in a work setting, after giving appropriate consideration to all of [his] impairments."  *McGuire v. Astrue*, No. 5:07-00254, 2008 WL 4446683, at *5 (S.D.W. Va. Sept. 26, 2008) (quoting *Ostronski v. Chater*, 94 F.3d 413, 418 (8th Cir. 1996)).  An RFC assessment reflects an individual's "maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis."  SSR 96–8p, at *2.  Plaintiff argues that the ALJ ignored evidence supporting Plaintiff's limitations affecting his right arm in evaluating his credibility.  Plaintiff also argues

the ALJ erred in finding he could perform light work in light of his loss of fine dexterity in his right hand and chronic back pain.  The Court disagrees.

### The ALJ's Decision

In evaluating limitations associated with Plaintiff's right arm, the ALJ noted Plaintiff's testimony that he had a loss of function/strength in three fingers of his right hand so that he was unable to pick up anything—such as coins—or to brush his teeth utilizing his right arm.  [R. 17.]  The ALJ also noted Plaintiff's testimony that he could use his left hand but not his right; that he had difficulty tying his shoes, bathing, dressing, and feeding himself; and that he had constant back discomfort.  [R. 17–18.]  Upon considering the evidence, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, Plaintiff's statements concerning the intensity, persistence and limiting effects of these symptoms were not entirely credible.  [R. 18.]

### Right Arm Laceration

With respect to Plaintiff's October 2012, right arm laceration repair, the ALJ considered Plaintiff's physical exams of record, which revealed intact right arm motor/sensory functions and full ranges of right arm movements, with no signs of extremity swelling/tenderness.  [R. 20.]  The ALJ specifically noted that:

> On November 5, 2012, the claimant presented to Kirk Hensarling, M.D., with allegations of a right arm laceration, with numbness and grip weakness.  Dr. Hensarling observed the claimant possessed intact sensory/motor functions, which suggested the claimant basically had intact functions (Exhibit

> 31F).    In November/December of 201[2],[8] the claimant
> received postsurgical treatment from the Hand Surgery Center.
> On November 20 and December 11 of 2012, it was noted the
> claimant was doing well post-operatively (see page 1 of Exhibit
> 32F, and page 1 of Exhibit 33F), which indicated the claimant's
> arm condition improved after surgical intervention.    (Exhibits
> 32F and 33F).

[R. 20 (footnote added).]

Contrary to Plaintiff's argument, the ALJ actually considered evidence of record related to Plaintiff's recovery after his arm laceration.    The evidence on which Plaintiff relies to challenge the ALJ's decision—a medical statement from Dr. Robert R. Walker dated October 30, 2014—was not before the ALJ at the time of his decision.    Thus, the ALJ did not err in failing to consider this evidence.    Further, the Appeals Council found the medical statement from Dr. Walker, which was dated over eight months after the ALJ's decision, did not provide a basis for reversing the ALJ's decision [R. 1.], and Plaintiff failed to challenge the Appeals Council's determination.    Upon review, the Court finds the ALJ properly considered the medical evidence of record and Plaintiff's testimony related to the limitations associated with his arm laceration and determined that these limitations did not restrict him from all work.

Additionally, the ALJ questioned the vocational expert regarding a hypothetical person with the following limitations:

> Assume a person of [Plaintiff's] age.    He was 24 as of the
> alleged onset date.    He is presently 30 years of age.    The
> education that is reflected in the record, testimony to that
> effect.    The work experience and skill set associated with that
> past relevant work that has been defined.    And then the person

---

[8]The ALJ's opinion references 2011; however, the exhibits are dated 2012. [*See* R. 774–82.]

20

is capable of the following additional things. The ability to lift up to 20 pounds on a occasional basis. Lift or carry up to 10 pounds on a frequent basis. Stand or walk for four to six hours out of eight in an eight hour workday. Sit for up to six hours with the normal breaks which are allowed. The person can– oh, the person is right hand dominant. Okay? Just so we'll note that for the information. And the person can use the upper extremities to perform push, or pull operations frequently on the right. There's no limitation on the left. Alright? And can operate foot controls frequently. And this would be bilaterally. In other words, with either lower extremity. Can occasionally climb ladders or scaffolds. Cannot climb ropes. Can frequently climb ramps or stairs. Can balance for up to one half of a work period, which is quantified as four hours out of eight. Can stoop occasionally. Cannot crouch. Can occasionally kneel and occasionally crawl. The person should avoid–well, let me see. There's some manipulative limitations. All right. Fingering, which is fine manipulation, which involves items no smaller than the size of a paperclip can be done frequently– excuse me– on the right handling objects, which is gross manipulation can be done frequently on the right for either one of those. There are no limitations on the left. The person should avoid concentrated exposure to hazards. Examples of such hazards include such things as the use of moving machinery or exposure to unprotected heights. Is limited to occupations which do not involve the handling or sale or preparation of alcoholic beverages or access to narcotic drugs. And the work that can be done is limited to the performance of simple, routine, and repetitive tasks. Work cannot involve any kind of fast-paced production rate work or fast-paced work. It can involve pace work and production rate work. Neither of those can be fast-paced. The individual can have occasional interaction with the general public and can be around co-workers throughout the day with occasional interaction with the general public.

[R. 86–88.] The vocational expert testified that a person with these limitations could

perform the following jobs: linen grader (361.687-022, SVP of 2); sorter (521.687-102, SVP

of 1); and mail clerk or mail sorter (209.687-022, SVP of 2). [R. 88–89.]

Plaintiff asked the vocational expert whether a limitation to no fine manipulation and

no gross manipulation with the right hand would affect her answer. [R. 91.] The vocational

21

expert responded that this additional limitation would negate the jobs of linen grade and the mail sorter, but that Plaintiff could still perform the other sorter job. [R. 92.]  The vocational expert was also asked by Plaintiff's counsel whether the inability to use his right hand for any kind of production work would affect her answer.  [R. 93.]  The vocational expert responded that this limitation would be the same as saying no fine or gross manipulation with the right hand.  [R. 93–95.]  Thus, even if the ALJ had found Plaintiff incapable of using his right arm/hand, the vocational expert still found Plaintiff capable of performing work as a sorter (521.687-102, SVP of 1).

### Back Pain

With respect to his back pain, the ALJ considered Plaintiff's treatment records from 2008 to 2011 from Complete Healing & Wellness for his low back pain, depression, leg neuropathy, obesity, and anxiety.  The ALJ explained as follows:

> The absence of muscle atrophy evidenced the claimant has been using all of his muscles. These objective findings indicated the claimant was essentially able to function physically and mentally, despite his lumbar/thoracic spine disorders and mental disorders. Furthermore, in August of 2011, it was reported the claimant had previously undergone an electromyography (EMG), which was negative for lower extremity radiculopathy (see page 20 of Exhibit 25F) and fails to support a finding of disability. Of note, on September 13, 2011, the claimant was discharged from care due to medical non-compliance [see page 2 of Exhibit 28F], which likely explained why the claimant's medical conditions were not under better control (Exhibits 13F, 17F, 19F, 25F, 27F, and 28F).

> From 2007 to 2009 and in 2011, the claimant was treated at Piedmont Spine & Neurosurgery Group for low back pain. In June of 2007, an EMG was normal (see page 2 of Exhibit 14F), and does not support a finding of disability. Physical evaluations of the claimant demonstrated a normal gait/station, an independent heel/toe walk, normal reflexes/coordination, a

22

normal gait, a normal mental status, normal cognitive functions, unimpaired attention/concentration/memory functions, and negative straight leg raises. No signs of leg atrophy or weakness were detected. The aforementioned objective exam results established the claimant was basically able to function physically and mentally (Exhibits 14F and 26F).

In April of 2012, lumbar spine radio graphs showed evidence of L2-3 degenerative disc disease (DDD), and L5-S1 facet disease. However, the films did not show any signs of acute bony or soft-tissue abnormalities, or of flexion/extension instability (see page 13). These objective medical tests support a finding of severity, but not a finding of disability. In February of 2013, lumbar spine x-rays were negative (see page 12), and also fail to support a finding of disability (Exhibit 34F).

In 2012, the claimant was treated at MUSC for back pain. In May of 2012, a lumbar spine MRI scan demonstrated an L5-S1 disc protrusion, but with only mild degenerative changes (see page 7).

[R. 19–20.]

Plaintiff argues the ALJ failed to explain his weighing of Dr. Walker's opinion regarding the duration that Plaintiff can stand and sit, which is also supported by a June 4, 2012, study which the ALJ failed to address, and which contradicts two other studies on which the ALJ relies. [Doc. 8 at 7.] However, as stated above, Dr. Walker's opinion was not before the ALJ and was not created until eight months after the ALJ's decision. Thus, there is no error in the ALJ's failure to consider evidence that was not of record at the time of his decision. Additionally, the June 2012, study to which Plaintiff references is an EMG study to evaluate Plaintiff for lumbosacral radiculopathy versus neuropathy. [R. 805.] The study gives no opinion as to Plaintiff's ability to stand or walk. Plaintiff does not direct the Court to any evidence of record, not considered by the ALJ, which would require the Court

to find that limitations associated with Plaintiff's back pain prevent him from working.

Accordingly, the Court finds that the ALJ's decision is supported by substantial evidence.

## **CONCLUSION AND RECOMMENDATION**

Wherefore, based upon the foregoing, the Court recommends the Commissioner's

decision be AFFIRMED.

<u>s/Jacquelyn D. Austin</u>
United States Magistrate Judge

January 5, 2017
Greenville, South Carolina